### Stanley, et al. v. Griffith.

(Decided June 8, 1928.)

## Appeal from Henderson Circuit Court.

1. Ejectment.—In suit by devisees under will, given estate in land as remaindermen, against one holding possession of property under assignment from life tenant who had surrendered 519-acre tract mentioned· in will, plaintiffs had burden to show that additional tract claimed was in fact part of the land devised by the will, and were required to recover on the strength of their own title, not on the weakness of that of their adversary.

2. Ejectment.—Plaintiffs seeking to establish title as against defendant in possession must recover, if at all, on the strength of their own title, and defendant need not show source of his claim as condition to continued right to possession.

3. Ejectment.—In suit by devisees under will, given estate in land as remaindermen, against one holding possession of property under assignment from life tenant, plaintiffs held not to have sustained burden to show that additional tract claimed was in fact part of land devised by will.

4.   Ejectment.—Mere fact that life tenant had possession of 62-acre
     tract, in addition to tract of 519 acres designated in will, was not
     ficient to establish that he acquired possession of the additional
     tract under the will, in suit by remaindermen against life tenant's
     assignee after life tenant's death.

JOHN C. WORSHAM and LEO KING for appellants.

YEAMAN, PENTECOST & YEAMAN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The appellants were unsuccessful plaintiffs in the
trial court.  John Folden, Sr., died in 1859, and this is
taken from his will:

> "I give and devise to my son, John Folden, my
> tract of land, containing 325 acres lying in Hender-
> son county on the Ohio river called the Harrison
> farm.  Also my tract of land containing 519 acres
> called the Knight Pond tract. . . .  To have and
> to hold said two tracts of land to him, the said John
> Folden, during his natural life and after his death to
> his children forever. . . .  All the remainder of
> my estate, property of every kind and description,
> whether real or personal or mixed, not hereinabove
> willed to my son, John Folden, I give and devise to
> my grandchildren, John Turner Stanley, William
> Thomas Stanley, Nathaniel Green Stanley and
> George Washington Stanley, children of my de-
> ceased daughter, Pernila. . . .  The same is to be
> equally divided among them.
>
> "If my said son, John Folden, should die leav-
> ing no child, or children nor their descendants living
> at his death, then and in that event, the property
> willed to him during life shall go to my said grand-
> children above named to be held and enjoyed in the
> same manner and under the same terms and restric-
> tions as the other property herein willed to them.

John Folden Jr., became involved financially and
made an assignment in 1898.  His life estate in this prop-
erty when sold was bought by the appellee, Griffith, who
held it until 1923, when John Folden, Jr., died without
issue.  In the meantime, John Turner Stanley and Wil-
liam Thomas Stanley had also died intestate and without
issue..  Hence upon the death of John Folden, Jr.,
Nathaniel Green Stanley and George Washington Stan-

ley became the owners and entitled to possession of this property. George Washington Stanley conveyed his half to George W. Stanley, Jr., Neil M. Stanley, and John Folden Stanley, and these three and Nathaniel Green Stanley were the plaintiffs below, and are the appellants here. On the death of Folden, Jr., Griffith surrendered to them possession of 510 acres of land. On November 20, 1924, plaintiffs began this action against Griffith, and in their petition they allege:

> "That they are the legal owners in fee simple and entitled to the immediate possession of a tract of land containing about 62 acres, situated near Beals, in Henderson county, Ky., and bounded and described as follows to wit: A tract of land situated on the north and south side of the Louisville, Henderson & St. Louis Railroad Company just east of the town of Beals, Henderson county, Ky., and bounded on the south by the lands of Will Clary and on the east by the lands of Dave Highland and on the north by the lands of Ed Dunbar and on the west by the lands owned by Nathaniel G. Stanley and George W. Stanley, Neil M. Stanley and John Folden Stanley.

> "The plaintiffs further state that they have demanded of the defendant, J. T. Griffith, the possession of said property above described, and that the defendant has failed and refused to deliver the possession of said property to these plaintiffs, who now own said property and have owned same in fee simple since the —— day of October, 1923."

The plaintiffs prayed judgment against the defendant, Griffith, for the possession of the said land and damages for the withholding of it. Griffith filed two paragraphs of answer. The first was a traverse of the petition, and in the second he says:

> "He is the owner of the land described in the petition, and has, for more than 15 years and for more than 20 years, been in the actual, open, notorious, continuous, peaceable, and adverse possession of said tract of land, claiming it as his own and against all the world."

By reply, the plaintiffs traversed the plea of adverse possession. Thus we see there was nothing in the petition to show the source of the plaintiffs' title to this land,

nor was there anything in the answer to show the source of Griffith's title. It developed in the evidence that the plaintiffs' claim to this land was founded on the belief on their part that this Knight Pond tract, instead of containing 519 acres, as stated in the will of John Folden, Sr., really contained 572 acres, and that this 62 acres was a part of this Knight Pond tract, and of course it was necessary for plaintiffs to establish that by evidence in order to succeed. The testator, Folden, had by deed, in Book S, page 34, acquired in 1858 title to 415 acres from one Green Berry Sutton and wife. He had also about the same time, by deed recorded in the same book, acquired title under a sheriff's deed to 104 acres of land that had belonged to I. M. Freels and Beverly Freels. The two tracts thus made up the 519 acres which the testator described as his Knight Pond tract.

In their efforts to establish that this 62 acres was a part of this Knight Pond tract, they called as a witness the plaintiff, Nathaniel G. Stanley, and about all he was able to say was that this 62 acres was land of which John Folden, Jr., had possession. Mr. Stanley was born in 1851, and thus was only 8 years old when the testator, Folden, died, and hence he was unable to identify this 62 acres as a part of the Knight Pond tract which his grandfather Folden had owned. In fact when he was asked the specific question, his answer was: "I don't know that I could say that; that is, I don't know that I know where this land was. I knew my grandfather owned a great deal of land in the woods." When asked to state whether or not in a general way he was acquainted with the Knight Pond tract at the time his grandfather died, his answer was, "I could not say that I was." The next witness was Henry Carter, who was 3 years old when the testator, Folden, died. Then came William Chase, who was born after the death of Folden. Next came Eugene Freels, the date of whose birth is not given, but who said no more than that he had been acquainted with this land since 1880, and about all these three witnesses were able to testify to was that John Folden, Jr., was in possession of this 62 acres of land. They were, of course, unable to state just how he was holding it.

This was all the evidence for the plaintiffs, and, at the close of the plaintiffs' evidence, the court instructed the jury to find for Griffith, and it is this action of the court, together with complaint of the court's ruling in rejecting evidence, of which plaintiffs complain in their

motion for a new trial. In order to recover, it was necessary for the plaintiffs to show title in themselves to this land, and, as they are claiming under the will of John Folden, Sr., they must establish that he had title to it, and that they failed to do. There is nothing in the pleadings or in the evidence to show the source of Griffith's title, but Griffith does not have to establish title. He is in possession, and, unless the plaintiffs were able to show some right to possession in themselves, Griffith cannot be disturbed. If they recover at all, the plaintiffs must recover on the strength of their own title. See Noe v. Russell, 213 Ky. 746, 281 S. W. 1033.

A map was used in the trial of this case, and to that map the witnesses frequently referred; but that map is not before us, and its absence has added to our labors and our difficulties. In speaking of a map in the case of Conley v. Com., 208 Ky. 538, 271 S. W. 566, we said:

"The rule is well settled that when an appeal is prosecuted on only a partial record it may be presumed that the judgment is supported by such omitted parts, either of themselves or by the explanation they afforded of the other evidence."

In the deeds by which the testator, Folden, acquired this Knight Pond tract, there is not contained such description of the land by courses and distances as would enable any one to identify the tract without resort to extraneous evidence, and this the plaintiffs failed to furnish. Of course, if Griffith was holding this 62 acres as a part of the life estate of John Folden, Jr., his possession was not adverse to the remaindermen; but the mere fact that John Folden, Jr., had possession of this 62 acres is not sufficient to establish that he acquired that possession under the will of his father, and it was necessary that that be established by the plaintiffs if they hoped to recover. They failed to do so, and the court properly directed the jury to find for Griffith. Griffith does not have to show that this property belonged to him until after the plaintiffs have succeeded in making some showing that it belonged to them, and they made none.

The judgment is affirmed.